The sole question in this case is whether Mr. Valenzuela's 2011 custodial interrogation regarding alienage was reasonably likely to elicit an incriminating response such that Miranda warnings were required. The answer is yes. In 2011, nearly half of all federal to be prosecuted for such a crime than he would have been a decade earlier. Given this dramatic surge in criminal immigration enforcement, as well as Mr. Valenzuela's heightened risk of prosecution, the District Court committed reversible error in admitting his sworn statement at trial. I want to define the scope of what I'm asking for, because I think that may help the Court figure out what it doesn't need to reach. We're not saying that the Court needs to establish a per se Miranda rule in every single immigration interrogation. We're saying that if a person is being interrogated and they're not given Miranda warnings, and then at some point the government chooses to prosecute them, and they're being prosecuted at a time when there's a record high level of immigration enforcement going on, then the government needs to rely on something other than the person's sworn statement. What could Mr. Valenzuela Sanchez have been prosecuted for after the 2011 interrogation? What could he have been prosecuted for? Yes. He could have been prosecuted for either illegal entry under 1325 or illegal reentry under 1326. And both of those have an element of alienage. And that's the only thing that we're contesting here, is that when he was interrogated about his alienage during that sworn statement in 2011, it was reasonably likely that this would elicit an incriminating response. So what did the officers know at the time they interrogated him in 2011? It's not entirely clear. My guess is what they knew is they knew about how many times he had left or been removed from the back. Why are we guessing about that? Because it was not in the record, Your Honor. So we don't know what the officers knew? We don't know. We don't think that that's necessarily dispositive, because the authority that the government itself has cited says that the officer's subjective intent or knowledge may be relevant, but it's not conclusive. So if they don't know that he's previously entered the country, then this may just be sort of run-of-the-mill kind of interrogation that we do of immigrants all the time. I'm just curious as to whether your rule doesn't end up with every alien who's picked up anyplace in the United States at any time has to be given a Miranda warning of some kind. I don't think it does, Your Honor. And here's why. This only came up during his been given Miranda warnings and then he had never been prosecuted, none of this would matter. We wouldn't be here. I'm sorry. I'm sorry. So this is a follow-on to Judge Bybee's, but in looking at the form, the interrogation form, warnings are given. You know, you have the right to remain silent. Anything you say, I think this is the one you'd want modified. Anything you say can be used against you in court or in any immigration administrative proceeding, you want to add criminal proceeding. And then they have the right to talk to a lawyer before you ask questions. You can't afford it. The way I read this, this is a Miranda warning without reference to criminal. And so you're basically asking for a reference to criminal. It almost seems like it'd be easier to have a general rule instead of a specific rule based on what's in the interrogator's mind. We don't oppose that, Your Honor. If that's easier, and frankly, I'm not quite sure why that isn't done. But I don't know why you're limiting what you're asking for, and I honestly don't know why either, because essentially they are getting, if this is the form, which I'm not sure of and I'm going to ask government counsel, they're getting everything except the word criminal. Right. That's right. And so, for instance, one of the things on the form, however, that I think is a little confusing is that it says, for instance, it's very important that you tell me the truth. The things that you tell me will be used in this. And I think another thing to consider here is when we're trying to figure out whether this person would know that his statements could be used in a criminal prosecution, I think it's important to remember that there's a border patrol officer in green sitting in front of them. Green, in the minds of many people, is border patrol. It's immigration. It's not criminal. And so I think that the types of warnings that would be necessary to really put a person on notice, that they could be criminally prosecuted, is all the more important because of that. They need to not be told that, you know, you should tell me the truth. It's very important that you tell me the truth. The 2011 incident follows a DUI. Correct. And frequently when we have people who may be from not lawfully in the United States who were picked up for criminal matters such as DUIs, the border patrol has some interest in that because then they issue an NTA and so that they can be removed from the country. And that, of course, is all civil proceeding. You don't have a right to counsel in that. That's not a criminal proceeding. Now, why isn't that the answer here? They're looking, they're just trying to figure out whether he's lawfully in the country so that they can remove him. And he's not entitled. In fact, a Miranda warning would actually be incorrect in that situation, wouldn't it? Your Honor. He wouldn't be entitled to counsel at the government's expense. That's right. The only thing here is that there is this problem that essentially there's no such thing anymore. Within the last decade, there's no such thing as a purely civil interrogation. And here's why. Half of the Federal criminal docket right now is immigration-related cases in which alienage is an element of the crime. You can't have half of the Federal docket be immigration-related crimes and then take someone into a room, interrogate them about their alienage, and say, well, that's not reasonably likely to elicit any criminal response. Except that the only thing that the 2011 sort of confession that he's from Mexico has to do with future actions, that is, that at some time in the future that he's going to violate some other law other than the one for which they're investigating him at the time. Isn't that correct? In terms of the warnings that he was given about if he comes back, that sort of thing? Right. Right. I mean, in fact, for Mr. Valenzuela-Sanchez, the thing he's convicted of is not anything in 2011. It's something in, what, 2012 or 2014, right? And your problem is that they have used his admission that he is from Mexico given in 2011 as part of his conviction for the 2014 actions. That's correct. So it's only that at some future time he might commit some other crime in which the fact of alienage would be important. That's correct. And I think that, you know, Your Honors is maybe getting to one of the issues in this case about how close does a sequence have to be. And I want to go back to a question I asked just a minute ago, which is what kind of a warning then do you think he was entitled to? I think he was entitled to a warning. Frankly, I would agree with Judge Wardlaw. I think he was entitled to basically a warning not that he was entitled to a lawyer, which you could use. Okay. So Miranda's out. So you don't want to give him Miranda. No, wait. What I was saying is he's entitled to a lawyer, but not unlike Miranda. And they do tell him he's entitled to a lawyer. Yes. He is entitled to get a lawyer. This stems from the Fifth Amendment, and that applies to all persons. So he does have those due process rights. Correct. He doesn't have all the exact same rights as his. Correct. And I think one of the problems here, too, is that when the Border Patrol officer says this can be used in any administrative proceeding against you, that implies that it can't be used in a criminal proceeding. If it could be used in a criminal proceeding, then it would seem natural that the warning would include that. So are you asking this Court, then, to craft a new warning? Since we can't use Miranda because Miranda would be wrong, what is it that you want the Border Patrol to say? We would want the Border Patrol to say, basically, you should know that this can be used against you in both a civil and a criminal proceeding. But you've, I think, in your exchange with Judge Bybee and Judge Wardlaw, I think you've virtually admitted that Miranda doesn't apply. And so you want us to craft a new prophylactic rule that applies to these kinds of interrogations, but it's not a rule required by Miranda, is it? Well, Your Honor, I do think that there are differences between maybe what would be an appropriate warning here and that sort of thing. But what I'm saying, ultimately, is this. If the government is going to prosecute the record numbers of people they're prosecuting for immigration crimes, they have to use either Miranda as the person or use some other evidence. Now, the government gets birth certificates all at once. That might be a good rule, but you haven't, in my mind, linked that sufficiently with the requirements of Miranda when Miranda applies. You virtually said Miranda doesn't apply. Well, I apologize if I misspoke, Your Honor. I don't think you misspoke. I think you're correct.  Our position, Your Honor, is essentially that if the government wants to use these for purposes of prosecution, frankly, at any time, then we believe that a Miranda-like statement is... That's almost like saying, well, you know, you have to have a warning on your income tax return because it could be used in a criminal prosecution if you tell a lie, right? Well... What's the difference? And that's actually exactly what the Supreme Court said in, or similar to what the Supreme Court said in Mathis, and that was an income tax situation. And the Supreme Court there said, look, there's no distinction between civil and criminal proceedings. Even in a civil proceeding, it's better. It's a better practice to give Miranda warrants. It might be better, but it's not required by Miranda. That's my point. It might be good policy, but it's not a violation of Miranda. So you're just asking us to create a freestanding rule, I think. I apologize if I seem inconsistent, Your Honor, but honestly, what we're asking for is that if the government wants to use a sworn statement in a criminal prosecution, and rather than getting the person's birth certificate, for instance, then the government needs Miranda warnings. That's our position. And I think with the Court's permission, I'll save the remainder of my time. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. Helen Hong on behalf of the United States. Judge DeShima and Judge Bybee, you all are correct that in an unbroken line of cases since 1975, this Court has held that Miranda warnings are not required in the civil deportation context. And effectively, what Ms. Hartzler has requested is a break from that in most cases. To the extent that there's something different being requested here, this sort of Miranda-lite warning, that's nothing that was identified in the opening brief. And to the extent that that's being raised now, it's been waived. So I'm just wondering, so this form, is this form, this affidavit form that's used in English and in Spanish, is that in general use for these circumstances? Your Honor, there are different forms that are used depending on the context. So on ER 80, that's the form at issue here. That was the form that was used in connection with the civil deportation proceeding. The form itself identifies that it's for the record of sworn statement and proceedings under Section 241A5 of the Act. And then in the actual warning itself, it identifies that the warnings would provide what the purpose and consequences of the interview was. The purpose being the civil deportation context. On the next two pages, ER 84 is a different type of form that immigration officers use. And you'll see it's titled Affidavit. And what is identified there is that that form is used in order to obtain a sworn statement in connection with an investigation into illegal reentry into the United States. So this goes into the separate and dual purposes of an investigator. When it's a purely civil administrative removal proceeding, the form that was used is the one at ER 80. In 2012, subsequently when full Miranda warnings were provided, that's at ER 84, a separate form was used where Miranda warnings were provided in detail. And as Your Honors noted, there is a... Was that the form that was prepared in connection with this current prosecution? No, Your Honor. This was prepared in connection with the removal in 2012 that predated the 2014 prosecution. But at that time, likely in light of the number of times that the defendant had been removed, the Border Patrol agent that was interviewing the defendant was likely concerned that there was a potential for criminal prosecution as well. So it's... What is it? It's discretionary with the interviewing officer whether to use this form I-215B or not? No, Your Honor. I think that what is... What the forms reflect is that there is a purpose for which the statements are being obtained from the individual being interviewed. So are you saying that you used the form that's at ER 84 if the officer thinks there's a potential for criminal liability for a future reentry? Well, and that's not in the record in this case. What we know is that this form was used in 2012 after the defendant had been removed a number of times. So that means that at least in the officers, it's reasonable to think that he might be next because we know that there's many times that people enter and they're just sent back and there's no forms made, no sworn testimony, and they just are sent back across the border. And then it gets more serious due to the number of times they've crossed the border and then they take this form. And again, Your Honor, that's not in the record and that's a problem with the posture of this appeal. It's something we sort of know from having read so many of these cases. Correct. And I think as a sort of practical understanding, that's correct. The Border Patrol agent would have a reflection or an understanding about whether a question would be reasonably likely to elicit an incriminating response that hinges on the specific factors and specific history of the defendant. Okay, so let me ask you this. So the reason you say you have the right to remain silent is that you're recognizing that the person has a Fifth Amendment right against self-incrimination. In criminal proceedings, Your Honor, yes. In criminal proceedings. So this form actually recognizes the potential for a criminal proceeding, right? On ER 84, yes, Your Honor. Yes. So when you use this form, and I'm not saying that anything, that any particular constitutional provision requires it, but when you're using this form and acknowledging that there is a potential for a criminal prosecution, why wouldn't the government just stick in criminal in that line? I mean, it seems as though, I mean, you and I are reading this because we understand the Constitution, read this and understand the implication. But someone who's just coming across the border maybe doesn't know that much about the U.S. Constitution doesn't necessarily see the implications from all of this. Right. And I would note that that's not the only sort of Miranda deficiency that's contained in the warnings provided on ER 80, for example. There isn't the right to an appointed attorney if the individual's indigent. But they don't have that right under the Fifth Amendment, do they? I mean, I thought they only had that right under the Sixth Amendment. Right. Well, the Miranda warnings as a prophylaxis would, and individuals advise that they have the right to an attorney if they The Miranda warnings assume that it's a citizen, and so they have all the rights of the Sixth Amendment. But as to the Fifth Amendment rights, we know this person has. And I would just note that the relief that Mr. Valenzuela-Sanchez has requested is full Miranda warnings. And I think this gets back to the first point that Ms. — that Judges Feige and Tashima made, which is that's just an incorrect and inaccurate recitation of the law as it applies in the civil deportation context, which is why the sweeping rule that Mr. Valenzuela-Sanchez has requested would be wrong, because it would apply in the context, for example, of an immigration judge. An immigration judge in an immigration purely administrative and civil proceeding would have no obligation to inform an individual before him that he has a right to an appointed attorney. So on page 84, he has the right to remain silent. Anything can be used against you in court or in any immigration or administrative proceedings. It doesn't actually use the word criminal there. Is this consistent with Miranda? Yes, Your Honor. My understanding is that this would be consistent with Miranda. But, again, the question presented is whether the warnings provided at ER 80 in 2011 were somehow deficient. And given the record facts that we do have, so putting aside the non-record facts and citations that Mr. Valenzuela has identified in support of his arguments, what we know is that the face of this document, ER 80, reflects that the purpose of the interview was in connection with the deportation or removal proceedings of the defendant. That purpose is congruent with what actually happened. So in Mata Bundes, what this Court has said is that the close sequence of events can inform what the purpose was. Here, the close sequence between the statement and the removal was on the same day, August 11th of 2011, informs that the purpose of this interview was a civil deportation proceeding. The same is true when looking at the actual consequences of the interview. The actual consequences of the interview was that the individual was deported and removed. I'm just curious about this, again, on ER 84. Yes, Your Honor. There is this statement that if you cannot afford a lawyer, one will be appointed for you before questioning, if you wish. Is the ICE or whoever it is, they have a panel of lawyers ready to be appointed if an immigrant asks for a lawyer? Your Honor, I don't know how the warnings here are actually put into effect. What this document does reflect is a facial consideration that the individual conducting the interview had a dual purpose. Potentially a criminal investigation into determining whether a 1326 prosecution was appropriate, and then a second civil investigative purpose. The document contained at ER 80, as well as the testimony of Agent Laura that was actually adduced at trial, all reflects and is consistent with what actually happened, that the purpose of the interview was consonant with a civil administrative proceeding. I do want to address how the court can avoid this question entirely as well, because even if there was some error, which there wasn't in this case, it would have been harmless. And that's for two reasons. In our briefing, we identified the judicial admissions that counsel made during opening and closing statements, which are binding here. And the admissions were not just that the United States has proven beyond a reasonable doubt that the defendant is guilty. But the admission was he is guilty. We don't contest that. And that was said twice, both in opening and closing. And beyond that, and I apologize, this is an oversight on my part. I didn't actually identify this in our briefing. But beyond that, there are other documents upon which the jury would have found that the alienage element had been met. So S.E.R. 246 is a document that was Government's Exhibit 3, and that's the Notice of Intent Decision to Reinstate the Prior Order. On that document, Mr. Valenzuela Sanchez, during his deportation proceedings, was told he was an alien subject to removal. About three-quarters of the way down on that document, he had an Acknowledgement and Response Opportunity. And in that Acknowledgement and Response Opportunity, he checked the box that said he did not wish to make a statement contesting the determination. He signed it and dated it August 11, 2011. That fact makes it so that the evidence in this case was beyond the mere fact of deportation, which was found to be inadequate in Ortiz-Lopez. That's the line of cases that Ms. Hartzler is relying on today to suggest that the error was not harmless, because there wasn't adequate evidence in order to prove alienage. In this case, there was more than the mere fact of deportation. The jurors had the fact that the defendant in 2011 chose not to contest the determination, even though the form provided that you may contest this determination by making a written or oral statement to an immigration officer. That, combined with the judicial admissions provided by counsel, may prove, beyond a reasonable doubt, that any error in this case was harmless. With that, Your Honors, unless the Court has any specific questions, the United States would submit and urge the Court to affirm the conviction. Thank you, Counsel. Thank you, Your Honors. The government seems to be relying on this theory that the form says what the interview is about. First of all, that's not in the record, and I don't know that that's necessarily something that we can rely on, and here's why. In 2012, they used the form with Miranda, but he wasn't prosecuted. And as we pointed out in our brief, there's not necessarily a lot of consistency in terms of how these interviews take place. And I just don't think that there's enough here to say that we can rely on the form to tell whether this person is going to be criminally prosecuted or not. And even if that were the case, that, for instance, in 2011, they didn't have the intent to prosecute him in that moment, I think, as we've shown through our briefing, there's certainly enough to show that if Mr. Valenzuela came back, which he did, then the government is absolutely going to rely on that sworn statement. Counsel, why haven't you waived all of this? Why, I'm sorry? Why haven't you waived all of this? Why is there harmless errors, the government says? You admitted everything. You told the jury to convict you on this one. Because, Your Honor, at that point, the 2011 admission or sworn statement had been let in. If we had continued to object, then we would have been in direct violation of the district court's order. And it would have been completely inappropriate to bring that up at trial. It would have been completely inappropriate to question Agent Lara about all these things and what was his motivation when it was already found to be an admissible document. And in terms of the judicial admissions, Your Honor, what I would just point out is the government has never pointed to an example of a situation where a judicial admission of generalized guilt is enough. What happens is judicial admission is a concept that only is invoked when, for instance, someone admits a specific fact or a specific element. And that didn't happen here. And in fact, in closing argument, the government attorney said, well, that's all nice and good that the defense counsel has said, oh, yeah, he's guilty. But we still have to prove every element of the offense beyond a reasonable doubt. And so there's just no way that any sort of admission at court during the trial was enough for the government to not have to carry its burden. I also want to briefly address on the point that counsel brought up in terms of the form at page 246. Counsel is basically stating that this is pretty much the same thing as a person admitting in his sworn statement that he is an alien. It's not, and here's why. You have a form that basically doesn't say, I am an alien. You're saying, I do not contest that the government can remove me. And that's different. And one of the reasons why it's different is because it's not uncommon for people who do have some sort of very complicated citizenship claim to admit, be deported, and then try to prove their citizenship claim from outside the United States. So as the government itself said in one of the arguments, I believe at the motion in limine, the government said, we need this 2011 sworn statement. It's critical. And we need it because it's the defendant stating his alienage from his own mouth. And that's why this is not harmless error. If this was such a great document, the ER 246, then the government would have relied on a closing argument, and they didn't. They didn't have any sort of reliance on it. They said themselves, we need this 2011 sworn statement. And that's why it was important. That's why there should have been Miranda warnings. And that's why this court should reverse the conviction. Alright, thank you counsel. U.S. v. Valenzuela-Sanchez will be submitted, and the court will take a brief recess to allow counsel for the next case to get set up for the next argument. Thank you.
judges: Tashima, Wardlaw, Bybee